# Illinois Official Reports

## Appellate Court

---

### *People v. Rivera*, 2016 IL App (1st) 132573

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MICHAEL RIVERA, Defendant-Appellant. |
| District & No. | First District, First Division<br>Docket No. 1-13-2573 |
| Filed | July 18, 2016 |
| Rehearing denied | September 28, 2016 |
| Modified upon denial of rehearing | October 3, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 98-CR-3865; the Hon. Thomas Joseph Hennelly, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, Patricia Mysza, and Darren E. Miller, all of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Mary L. Boland, and Michele Grimaldi Stein, Assistant State's Attorneys, of counsel), for the People. |

JUSTICE HARRIS delivered the judgment of the court, with opinion. Presiding Justice Cunningham and Justice Connors concurred in the judgment and opinion.

**OPINION**

¶ 1   Defendant Michael Rivera appeals from the circuit court's granting of the State's motion to dismiss his postconviction petition. Defendant, John Crowe and four others were charged with first degree murder in the 1998 shooting death of Marcus Lee. To support a claim of actual innocence, defendant attached to his petition Crowe's affidavit in which he attested that he, and not defendant, shot the victim. In this appeal, defendant contends the circuit court erred in dismissing his petition at the second stage of postconviction proceedings after reviewing the transcript of Crowe's guilty plea hearing and finding Crowe's affidavit was not credible. He further asserts his postconviction counsel provided unreasonable assistance under Illinois Supreme Court Rule 651(c) (eff. Dec. 1, 1984) by failing to object to the circuit court's consideration of that transcript.

¶ 2   To summarize the facts adduced at defendant's trial, defendant was a member of the Insane Deuces street gang. In the early morning hours of January 10, 1998, defendant was riding in a van with other gang members, including Crowe and his brother, Stephen Crowe. Defendant saw Lee walking and mistakenly believed him to be a member of a rival gang. Defendant pointed a gun at the van driver and told him to stop. Defendant and the Crowe brothers got out of the van and returned after shots were fired. Defendant was holding the gun when they returned to the van. Defendant later showed the gun to other gang members and said he was a "Stone killer."

¶ 3   Defendant's jury trial took place in 2000, and he was found guilty of first degree murder. The trial court determined that defendant was eligible for an extended-term sentence as the leader of an organized gang (730 ILCS 5/5-5-3.2(b)(8) (West 1998)), and the court sentenced defendant to 85 years in prison. On appeal, this court affirmed defendant's conviction and sentence. *People v. Rivera*, 348 Ill. App. 3d 168, 182 (2004). The Illinois Supreme Court remanded defendant's case for a limited hearing to allow the trial judge to articulate the bases for his rulings on the defense's exercise of peremptory challenges. *People v. Rivera*, 221 Ill. 2d 481, 515-16 (2006). Following that remand, the supreme court affirmed defendant's conviction and sentence, finding that any issue regarding a peremptory challenge in defendant's case constituted harmless error, given the strength of the State's case against defendant. *People v. Rivera*, 227 Ill. 2d 1, 26 (2007); see also *Rivera v. Illinois*, 556 U.S. 148, 162 (2009) (affirming the use of a harmless error analysis).

¶ 4   On January 10, 2008, defendant filed a *pro se* petition seeking relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2006)), claiming, *inter alia*, that the evidence was insufficient to establish his guilt and his trial counsel provided deficient representation for several reasons.

¶ 5   Defendant also raised a claim of actual innocence, supported by an affidavit of Crowe. Defendant stated in the petition that police "arrested and detained close to a dozen Deuces' suspects" who provided varying accounts of the shooting. Defendant asserted he had obtained an affidavit from Crowe "who has fully confessed to the crime of which the Petitioner was wrongly convicted of."

¶ 6        Crowe and his brother were tried jointly in 1998 for Lee's death, and Crowe was convicted of first degree murder on an accountability theory and sentenced to 50 years in prison.[1] On appeal, this court reversed Crowe's conviction and remanded for a new trial because Crowe was deprived of his right to be represented by the counsel of his choice. *People v. Crowe*, 327 Ill. App. 3d 930, 938 (2002). On remand, Crowe entered a guilty plea.

¶ 7        In Crowe's affidavit, which was dated April 9, 2004, he attested that he and his brother were in the van with other individuals on the night in question. Crowe did not mention defendant was present. Crowe attested he and his brother got out of the van after someone pointed out a rival gang member. Crowe stated that he fired five shots and one shot struck Lee in the neck. Crowe concluded by stating he was "giving this affidavit because my conscience has made it very difficult to live with myself these last 7 years with Micheal Rivera [*sic*] having [been] *** convicted for a murder he did not commit."

¶ 8        Postconviction counsel was appointed for defendant. In December 2011, counsel filed a Rule 651(c) certificate stating that he had consulted with defendant by phone and had obtained and examined the report of proceedings of defendant's trial. Counsel stated that defendant's *pro se* petition adequately presented his postconviction claims.

¶ 9        On September 28, 2012, the State filed a motion to dismiss defendant's postconviction petition, asserting Crowe's affidavit did not meet the test for evidence of actual innocence because it was not newly discovered and was "clearly lacking in reliability." The State acknowledged that at that stage of postconviction review, well-pleaded facts in the petition and accompanying affidavits were to be taken as true. The State argued Crowe's affidavit represented an inherently unreliable recantation and his attestations that he fired the fatal shots and that defendant was not present at the time of the shooting were "positively rebutted by the record."

¶ 10        On January 25, 2013, the circuit court heard arguments on the State's motion to dismiss. As to Crowe's affidavit, the State asserted that his attestation that he was the gunman was rebutted by Crowe's January 2004 guilty plea proceedings. The State further argued Crowe's affidavit was rebutted by the testimony at defendant's trial that defendant was the shooter. Postconviction counsel offered no argument, stating he would "stand on the *pro se* petition" of defendant. The circuit court stated it would "review the record and the pleadings and the arguments" of the State.

¶ 11        At a later court date, the circuit court indicated it had reviewed the record and Crowe's affidavit. The court noted that Crowe's conviction had been reversed and he had entered a guilty plea. The court asked the State for a transcript of the court proceedings on Crowe's plea.

¶ 12        The following colloquy then took place:

"THE COURT: I don't imagine it is a very long transcript, but from what I can see from the record, his case was reversed, I don't know why, and after the reversal there was probably some agreement he reached with the State for something lesser would be my guess.

MR. PAPA [Assistant State's Attorney]: 20 years.

MR. LANDRUM [Postconviction counsel]: It is probably important to see what the factual basis was.

---

[1]Stephen Crowe was acquitted. *People v. Crowe*, 327 Ill. App. 3d 930, 934 (2002).

THE COURT: Exactly. You are reading my mind, Mr. Landrum. We are thinking alike here."

¶ 13    The circuit court told the attorneys that it would obtain the transcript. At the next court date, the court told the attorneys it had obtained "a copy of the plea" taken by Crowe.

¶ 14    In support of the motion to dismiss defendant's petition, the State argued it was "pretty obvious that the plea that Mr. Crowe was sworn to refutes the affidavit that he has signed several years, I believe, after the plea." The State asserted that the record "absolutely rebuts any of the allegations in the affidavit as well as the rest of the record." Postconviction counsel for defendant offered no argument.

¶ 15    In granting the State's motion to dismiss, the circuit court stated:

"Much of the petition as pointed out in the State's motion is *** *res judicata* *** has already been ruled on.

I do not believe the ineffective assistance issue passes the *Strickland* muster at all.

The only thing that really concerns me was this new affidavit by the co-defendant Mr. Crowe which was dated on April 9th of 2004 and as the State points out, these things are usually viewed with suspicion particularly when they are executed by a co-defendant, a fellow gang member as well.

Case law is replete with examples of that. This is not something to be based—the credibility is always—credibility is always suspect in something like this.

And as a result I ordered the transcript as Mr. Papa points out of the plea that Mr. Crowe took before Judge Wadas on the 7th of January, 2004.

And he was placed under oath in that he was represented by counsel.

And in that plea he completely contradicts everything that's contained in the affidavit and it's kind of confirms [*sic*] my suspicions.

So not only is Mr. Crowe involved in this murder committed by Mr. Rivera but he is an unmitigated perjurer and not to be believed in any way shape or form.

There is absolutely no truthful basis for anything that he says in this affidavit.

And because of that there is nothing in this Mr. Rivera's petition that would cause me to grant him a postconviction [*sic*].

The motion to dismiss is considered and is granted."

¶ 16    Defendant now appeals that ruling.

¶ 17    The Act provides a method by which offenders serving their sentence can assert that their convictions were the result of a substantial denial of their rights under the United States or Illinois Constitutions or both. *People v. Tate*, 2012 IL 112214, ¶ 8. A postconviction action is not an appeal from the judgment of conviction but is instead a collateral attack on the trial court proceedings. *Id.*

¶ 18    In a noncapital case, a postconviction proceeding involves three stages. At the first stage, the circuit court must review the petition within 90 days of its filing and dismiss the petition upon finding it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a) (West 2006); *People v. Swamynathan*, 236 Ill. 2d 103, 113 (2010). Where, as here, that review does not take place within 90 days, the petition advances to the second-stage, where the circuit court must docket the petition for further consideration. 725 ILCS 5/122-2.1(b) (West 2006).

¶ 19    At the second stage of postconviction proceedings, counsel is appointed for the defendant if the defendant is indigent, and the State may answer or move to dismiss the petition. 725 ILCS 5/122-5 (West 2006). By moving to dismiss the petition, the State challenges the sufficiency of the pleadings as a matter of law. *People v. Coleman*, 183 Ill. 2d 366, 390 (1998). "Since there are no factual issues at the dismissal stage of the proceedings, the question is essentially a legal one, which requires the reviewing court to make its own independent assessment of the allegations of the petition and supporting documentation." *People v. Sanders*, 2016 IL 118123, ¶ 31 (citing *Coleman*, 183 Ill. 2d at 388-89). All well-pleaded facts that are not positively rebutted by the trial record are to be taken as true at a dismissal hearing. *Coleman*, 133 Ill. 2d at 380. The circuit court's dismissal of a postconviction petition at the second stage is reviewed *de novo*. *Sanders*, 2016 IL 118123, ¶ 31.

¶ 20    If the petition is not dismissed at this stage, the proceeding then advances to the third stage, where a hearing is held at which the defendant may present evidence in support of the petition. 725 ILCS 5/122-6 (West 2006); *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). At a third-stage evidentiary hearing, the trial court acts as the finder of fact, determining the credibility of witnesses and the weight to be given particular testimony and resolving any conflicts in the evidence. *People v. Domagala*, 2013 IL 113688, ¶ 93. Throughout the second and third stages of a postconviction proceeding, the defendant bears the burden of making a substantial showing of a constitutional violation. *Pendleton*, 223 Ill. 2d at 473.

¶ 21    In this appeal, defendant contends the circuit court erred in obtaining and considering evidence outside the record and assessing the credibility of Crowe's affidavit at the second stage of postconviction review. He also argues his postconviction counsel failed to provide reasonable assistance by effectively agreeing that the court should consider the transcript of Crowe's guilty plea proceedings. Defendant asserts this case should be remanded for further second-stage proceedings in front of a different judge and with representation by different appointed counsel.

¶ 22    The State responds that the circuit court could compare the factual allegations in the affidavit to the stipulated facts from Crowe's plea proceeding. The State argues that the court's consideration of Crowe's plea was proper under Rule 201(b)(2) of the Illinois Rules of Evidence (Ill. R. Evid. 201(b)(2) (eff. Jan. 1, 2011)), which permits judicial notice of adjudicative facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

¶ 23    While we do not dispute that the Illinois Rules of Evidence apply to this case, we find more pertinent section 122-2.1(c) of the Act, which specifically governs postconviction petitions and which provides:

> "In considering a petition pursuant to this Section, the court may examine the court file of the proceeding in which the petitioner was convicted, any action taken by an appellate court in such proceeding and any transcripts of such proceeding." 725 ILCS 5/122-2.1(c) (West 2006).

¶ 24    That section of the Act limits the review related to a postconviction petition to the record of that particular proceeding. Section 122-2.1(c) of the Act was recently addressed by our supreme court in *Sanders*, 2016 IL 118123, ¶ 43, where the court stated: "The Act itself contemplates that the trial court will look only to the record of the *subject petitioner's* case." (Emphasis added.)

¶ 25    We find *Sanders* to govern our analysis in the instant case. In *Sanders*, the defendant filed a successive postconviction petition alleging newly discovered evidence of actual innocence. Attached to that petition was a transcript of testimony that a codefendant, Gary Bingham, gave at an evidentiary hearing on a postconviction petition filed by another codefendant, Aaron May. *Id*. ¶ 14. In that testimony, Bingham recanted his identification of the defendant and May as participants in the crime. *Id*. ¶ 16. In granting the State's motion to dismiss the defendant's petition, the circuit court held that it had heard Bingham testify at two prior evidentiary hearings and found Bingham "to be a complete liar. Totally incredible and not worthy of belief." *Id*. ¶ 19. The court indicated that it considered Bingham's testimony from the prior evidentiary hearings as part of the record in the instant case. *Id*.

¶ 26    The appellate court affirmed the circuit court's grant of the motion to dismiss the petition, noting the circuit court had "heard Bingham's full testimony at a postconviction evidentiary hearing and found it unreliable and untrustworthy." *People v. Sanders*, 2014 IL App (1st) 111783, ¶ 22. The appellate court rejected the defendant's argument that the circuit court made an improper credibility determination as to Bingham's testimony. *Id*.

¶ 27    The supreme court held that the circuit court erred in finding Bingham not credible based on its consideration of his testimony at the previous hearing, noting that credibility determinations could only be made at a third-stage evidentiary hearing. *Sanders*, 2016 IL 118123, ¶ 42. The supreme court further held that when the circuit court dismissed the defendant's petition, the court should not have considered the record of May's postconviction evidentiary hearing, which the supreme court deemed "outside the record of petitioner's case." *Sanders*, 2016 IL 118123, ¶¶ 42-44.

¶ 28    Interpreting section 122-2.1(c) of the Act, the supreme court noted that although that section "governs trial court actions on an initial petition, there is no indication in the Act that the trial court has authority to look beyond the record at later stages in the proceedings." *Id*. ¶ 44. The supreme court rejected the contention that the trial court could consider "the record of proceedings not involving the petitioner whose case is before the court." *Id*. Noting, however, that it could affirm the appellate court's judgment on any basis supported by the record, the supreme court affirmed the dismissal of the defendant's petition at the second stage of review. *Sanders*, 2016 IL 118123, ¶ 55. Although the supreme court found in *Sanders* that the circuit court improperly considered evidence outside of the record in that defendant's case, the supreme court went on to affirm the dismissal of the defendant's petition, finding that Bingham's recantation "merely adds conflicting evidence to the evidence adduced at the trial." *Id*. ¶ 52. The supreme court held that even if the recantation was taken as true, it was not of such conclusive character as to probably change the result on retrial. *Id*.

¶ 29    In the case at bar, the State relies in part on the appellate court decision in *Sanders* to argue that the circuit court in this case could consider the record of Crowe's plea proceedings. In defendant's reply brief, which was filed several days after the supreme court's opinion in *Sanders* was issued, he asserts that "the State does not cite a case wherein a court of review found that a circuit court committed such an error [of making a credibility determination] and proceeded to affirm despite that error." We find *Sanders* to be such a case.

¶ 30    Again, we review *de novo* the dismissal of a postconviction petition at the second stage of proceedings. *Id*. ¶ 55. Where a defendant raises a claim of actual innocence, the relevant inquiry at the second stage of postconviction review is whether the defendant has made a substantial showing of actual innocence so as to warrant an evidentiary hearing. *Id*. ¶ 37.

Evidence in support of an actual innocence claim "must be newly discovered; material and not merely cumulative; and 'of such conclusive character that it would probably change the result on retrial.' " *People v. Ortiz*, 235 Ill. 2d 319, 333 (2009) (quoting *People v. Morgan*, 212 Ill. 2d 148, 154 (2004)). The "conclusiveness of the new evidence is the most important element of an actual innocence claim." *Sanders*, 2016 IL 118123, ¶ 47.

¶ 31    As in *Sanders*, Crowe's affidavit is not of such conclusive character that it would probably change the result on retrial. We note that the supreme court described the evidence of defendant's guilt in this case as "overwhelming." *Rivera*, 227 Ill. 2d at 26. The State presented testimony from witnesses who were with defendant before, during and after the shooting. Susan Shelton testified she was with defendant and several members of the Insane Deuces at a party on January 9, 1998, and was in the van with defendant, the Crowe brothers, and others. Shelton testified that John Crowe and defendant got out of the van and disappeared from her sight. Shelton heard gunshots, and defendant returned to the van holding the gun. In addition, Michael Rodriguez, a member of the Insane Deuces, testified he saw defendant with two weapons that evening and defendant told him later that night that he was a "Stone killer."

¶ 32    At the second stage of postconviction review, all well-pleaded facts not positively rebutted by the trial record are to be taken as true. *Coleman*, 183 Ill. 2d at 380. Accepting as true Crowe's representation in his affidavit that he, and not defendant, shot the victim, that scenario does not necessarily exonerate defendant. See *People v. Collier*, 387 Ill. App. 3d 630, 636 (2008) (the hallmark of actual innocence is total vindication or exoneration, not whether a defendant has been proved guilty beyond a reasonable doubt). Although Crowe's affidavit does not say that defendant was present in the van, he does not say defendant was *not* present. Moreover, the testimony of Shelton and Rodriguez places defendant squarely in the middle of these events. Shelton testified that defendant and Crowe got out of the van together and returned after shots were fired. Even presuming *arguendo* that Crowe was the gunman, defendant would still be criminally accountable for Crowe's actions.

¶ 33    As in *Sanders*, the circuit court in this case erred in making a credibility determination as to Crowe's affidavit at the second stage of postconviction review and based on its consideration of materials outside the record in defendant's case. However, our *de novo* review reveals that because Crowe's affidavit would not change the result on retrial, we conclude that defendant has not made a substantial showing of actual innocence, and his postconviction petition was properly dismissed at the second stage.

¶ 34    As a final matter, we address defendant's contention that his postconviction counsel did not provide reasonable assistance. We conclude that postconviction counsel's representation of defendant did not fall below the standard required by Rule 651(c).

¶ 35    Under the Act, postconviction counsel is required to provide a defendant who has filed a petition with a reasonable level of assistance. *People v. Morgan*, 2015 IL App (1st) 131938, ¶ 92. Those duties include consultation with the defendant to ascertain his contentions of a deprivation of constitutional rights, examination of the record of proceedings and trial, and the amendment of the defendant's petition if such amendment is necessary to adequately present those contentions. Ill. S. Ct. R. 651(c) (eff. Dec. 1, 1984). If counsel believes that the claims made in his client's petition are frivolous or without merit, counsel's ethical obligation at the second stage of postconviction proceedings is to seek to withdraw. *People v. Greer*, 212 Ill. 2d 192, 209 (2004).

¶ 36    The filing of a certificate under Rule 651(c) by postconviction counsel signifies those duties have been fulfilled and creates a rebuttable presumption that postconviction counsel has provided the reasonable assistance contemplated by the Act. *Morgan*, 2015 IL App (1st) 131938 (citing *People v. Perkins*, 229 Ill. 2d 34, 50-51 (2007)). A defendant has the burden of overcoming that presumption by demonstrating that counsel failed to substantially comply with the duties set out in Rule 651(c). *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. The presumption that the defendant received the required representation may be rebutted by the record. *People v. Hayes*, 2016 IL App (3d) 130769, ¶ 12.

¶ 37    Defendant does not assert that his postconviction counsel failed to fulfill the particular duties enumerated in Rule 651(c). Rather, defendant contends that counsel's obligations extend beyond the strictures of the Rule. He cites cases in which postconviction counsel's performance has been deemed unreasonable where, for example, counsel did not respond to the State's motion to dismiss the petition. See *People v. Powers*, 376 Ill. App. 3d 63, 65 (2007). Here, defendant claims his postconviction counsel provided unreasonable assistance by not challenging the circuit court's decision to consider the transcript of Crowe's guilty plea proceeding to assess his credibility and, in fact, expressly agreeing with the court's decision to do so.

¶ 38    Defendant relies on *People v. Shortridge*, 2012 IL App (4th) 100663, which we do not find analogous to the facts at bar. In *Shortridge*, the defendant's postconviction petition was dismissed at the second stage of review after postconviction counsel "confess[ed]" or agreed to the State's dismissal motion. *Id*. ¶ 6. Shortly thereafter, the defendant filed a *pro se* response to the motion to dismiss, which the circuit court refused to consider, stating that postconviction counsel continued to represent the defendant. *Id*. ¶¶ 7-8. On appeal, this court found the defendant was denied the right to a reasonable level of postconviction assistance under the Act. *Id*.¶ 16. Noting that postconviction counsel told the circuit court that the allegations raised by the defendant were "nonmeritorious," this court held that counsel should have then moved to withdraw. *Id*. ¶ 14. This court held the circuit court's dismissal order should be reversed and held that new counsel should be appointed to represent the defendant. *Id*. ¶ 15.

¶ 39    Here, although counsel commented on the court's decision to review the proceedings on Crowe's guilty plea, at no point did counsel express the view that defendant's postconviction claims were without merit, as occurred in *Shortridge*. Instead, counsel told the court he would "stand on the *pro se* petition" of defendant. Postconviction counsel is not required to amend a petition if it would only further a frivolous or patently nonmeritorious claim. *Greer*, 212 Ill. 2d at 205 (reasoning that such an amendment is not "necessary" within the meaning of Rule 651(c)). After counsel elected to stand on the petition, the circuit court decided that it would consider the proceedings on Crowe's guilty plea in assessing defendant's *pro se* postconviction claims. Unlike in *Shortridge*, postconviction counsel's remark in this case that the factual basis for Crowe's plea was "probably important" did not represent a concession of the petition's merits. For that reason, the acts of postconviction counsel in this case did not constitute unreasonable representation.

¶ 40    In summary, under the supreme court's recent decision in *Sanders*, the circuit court in this case erred in weighing an affiant's credibility at the second stage of proceedings and in considering materials that were outside the record of defendant's case. However, Crowe's affidavit was not of such conclusive character that it would probably change the result on

retrial. Moreover, defendant's postconviction counsel provided the reasonable assistance contemplated under Rule 651(c).

¶ 41　　　　Accordingly, for all of the reasons stated above, the circuit court's dismissal of defendant's postconviction petition at the second stage of review is affirmed.

¶ 42　　　　Affirmed.